

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARIO VALDES, INDIVIDUALLY, AND
AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF JOY FRANCIS "FRANK"
VALDES

       Plaintiff,

vs.

JAMES V. CROSBY JR., A.D. THORNTON, TIM GIEBEIG,
RONNIE WHITE, CHARLES SHOCKLEY,
TIMOTHY A.THORNTON, JASON PATRICK
GRIFFIS, DEWEY BECK, CHARLES BROWN,
ROBERT SAULS, MONTREZ LUCAS,
ANDREW LEWIS, DONALD STANFORD,
JIMMIE BURGER, DENISE MCEACHERN,
ROBIN RASH, MARY HUDNALL, and RAYMOND HANSON,
each in his/her individual capacity,

       Defendants.

_____ )

Case No.  3:01-cv-799-J32HTS

## SECOND AMENDED COMPLAINT and JURY DEMAND

Plaintiff sues defendants and alleges:

### Introduction

1. This is an action for compensatory and punitive damages alleging that the defendants,
contrary to the Eighth Amendment to the United States Constitution, knowingly and willfully used
excessive and unjustified force against plaintiff while plaintiff was incarcerated on X-Wing at
Florida State Prison.

158

## Jurisdiction

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action arising under the Constitution of the United States.

3.  Jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured to the plaintiff by the Eighth Amendment to the Constitution of the United States of America.

4.  The Plaintiff's claims for relief are predicated upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges and immunities secured to the plaintiff by the Constitution and laws of the United States and by 42 U.S.C. § 1988 which authorizes the award of attorneys' fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

5.  Plaintiff, MARIO VALDES, individually, and as the Personal Representative of the Estate of Joy Francis "Frank" Valdes, has fully exhausted his administrative rights and remedies..

## Parties

6.  Decedent, Joy Francis "Frank" Valdes, at all times material to this action, was a resident of Bradford County, Florida, incarcerated on X-Wing at Florida State Prison.

7.  Defendant JAMES V. CROSBY, JR., (hereinafter, "CROSBY") all times material to this action, was employed by the Florida Department of Corrections as the Warden of the Florida State Prison.  He is sued in his individual capacity.

8.  Defendant, TIM GIEBEIG, (hereinafter, "GIEBEIG"), at all times material to this action, was employed by the Florida Department of Corrections as an Inspector at the Florida State

Prison. He is sued in his individual capacity.

9.      Defendant, A.D. THORNTON, (hereinafter, "A.D. THORNTON"), at all times material to this action, was employed by the Florida Department of Corrections as an Assistant or acting warden at the Florida State Prison. He is sued in his individual capacity.

10.     Defendant, RONNIE WHITE (hereinafter, "WHITE"), at all times material to this action, was employed at Florida State Prison. He is sued in his individual capacity.

11.     Defendant, CHARLES SHOCKLEY (hereinafter, "SHOCKLEY"), at all times material to this action, was an inmate grievance administrator, employed at Florida State Prison. He is sued in his individual capacity

12.     Defendant, TIMOTHY ALVIN THORNTON (hereinafter "THORNTON"), at all times material to this action, was a Correctional Officer Lieutenant employed at Florida State Prison. He is sued in his individual capacity.

13.     Defendant, DEWEY BECK (hereinafter "BECK"), at all times material to this action, was a Correctional Officer Lieutenant employed at Florida State Prison. He is sued in his individual capacity.

14.     Defendant, JASON PATRICK GRIFFIS (hereinafter "GRIFFIS"), at all times material to this action, was a Correctional Officer employed at Florida State Prison. He is sued in his individual capacity.

15.     Defendant, CHARLES BROWN (hereinafter "BROWN"), at all times material to this action, was a Correctional Officer employed at Florida State Prison. He is sued in his individual capacity.

3

16.      Defendant, ROBERT SAULS (hereinafter "SAULS"), at all times material to this action, was a Correctional Officer employed at Florida State Prison.  He is sued in his individual capacity.

17.      Defendant, MONTREZ LUCAS (hereinafter "LUCAS"), at all times material to this action, was a Correctional Officer employed at Florida State Prison.  He is sued in his individual capacity.

18.      Defendant, ANDREW LEWIS (hereinafter "LEWIS"), at all times material to this action, was a Correctional Officer employed at Florida State Prison. He is sued in his individual capacity.

19.      Defendant, DONALD STANFORD (hereinafter "STANFORD"), at all times material to this action, was a Correctional Officer employed at Florida State Prison. He is sued in his individual capacity.

19A.    Defendant, RAYMOND HANSON (hereinafter "HANSON"), at all times material to this action, was a Correctional Officer employed at Florida State Prison. He is sued in his individual capacity.

20.      Defendant, JIMMIE BURGER (hereinafter "BURGER"), at all times material to this action, was a nurse employed at Florida State Prison. He is sued in his individual capacity.

21.      Defendant, DENISE MCEACHERN (hereinafter "MCEACHERN"), at all times material to this action, was a nurse employed at Florida State Prison. She is sued in her individual capacity.

4

22.     Defendant, ROBIN RASH (hereinafter "RASH"), at all times material to this action, was a nurse employed at Florida State Prison. He is sued in his individual capacity.

23.     Defendant, MARY HUDNALL (hereinafter "HUDNALL"), at all times material to this action, was the health services administrator employed at Florida State Prison. She is sued in her individual capacity.

24.     At all times material hereto, all DEFENDANTS were acting under color of state law.

### Cause of Action

25.     At all times material to this action, PLAINTIFF was an inmate in the custody and care of the Florida Department of Corrections ("Department").

26.     For months or years, inmates at Florida State Prison (FSP) have been subjected to gratuitous and sadistic beatings for no justifiable reason, by FSP correctional officers.

27.     From 1996 through 1999, these beatings have occurred with such frequency and regularity that the conduct has become routine.

28.     Some of the inmates who suffered these beatings have filed grievances wherein they have attempted to use an administrative remedy to notify prison officials of these violations of their constitutional rights and bring the abuses to an end. Despite the filing of hundreds of grievances alleging unjustified physical abuse by corrections officers, prison officials have chosen to ignore their duties to investigate the grievances and to take action designed to protect inmates from the cruel and sadistic acts of the corrections officers under their direction supervision and control.

29. To wit, the following is a selected chronology of abuse resulting in severe bodily injury to certain inmates creating a clear pattern of sadistic behavior by FSP correctional officers:

**February 16, 1996** – Inmate Raymond Scarborough sustained a beating by Officers Dobbs and Meadows.  Prior to February 16, 1998, a prison nurse who treated Meadows for minor injuries after a legitimate use of force with Scarborough heard Meadows say "I'm gonna get him (Scarborough), he's dead meat." Then on Feb 16, 1996, Scarborough was placed in handcuffs, a belly chain and leg irons. Meadows and Dobbs knocked Scarborough to the ground, then began punching and kicking Scarborough in the head, shoulders, torso and legs, severely injuring Scarborough. While facing disciplinary action, Dobbs was assigned to watch over the inmate witnesses during which time he harassed them and badgered them to find out how they would testify. Inmates filed grievances, but those grievances were summarily denied because they were not investigated.  Dobbs denied harassing them.  Dobbs was suspended and permitted to continue a pattern of inmate abuses.

**January 13, 1998** – corrections officers Griffis, Archie, Dean and Green, at the direction of Lieutenant Thornton, and under the observation of Lieutenant Anderson, entered inmate David C. Skritch's cell allegedly for the purpose of removing him from his cell. They entered his cell in full riot gear and used an electronic shield to shock Skritch to the floor. Once Skritch was on the floor the correctional officers punched and kicked him numerous times resulting in injuries so severe it was necessary to life flight the inmate to a hospital for emergency treatment.

**July 10, 1999** – Several Correctional Officers, including BECK, THORNTON AND BROWN attacked and beat Willie Mathews on X-wing without provocation and not incident to an official use of force. Mathews' jaw was broken and he sustained other injuries to his back and neck.

**July 13, 1999** Mrs. Justine Mathews spoke with GEIBIEG by telephone.  She told

GEIBIEG that she had received a letter from her son, Inmate Willie Mathews, stating that he **and other inmates on X-Wing** were being routinely beaten for no reason whatsoever.  She told GEIBIEG she was afraid for her son's safety. GEIBIEG assured her that he was sure nothing like that happens at FSP.  He told her that Willie was fine and that he would go and check on him.

**July 13, 1999** Mrs. Mathews called and spoke to GEIBIEG again.  GEIBIEG told her that he had visited Willie and Willie was laughing, and was just fine. In reality Mathews was not fine, he was in excruciating pain and was suffering from a broken jaw from a beating by correctional officers.

**July 15, 1999** Willie Mathews submitted an emergency grievance stating he feared for his life from constant beatings. He wrote that his jaw was broken, face was bruised and he was being denied showers, food and is being threatened that he will be killed if he says anything about the conditions on X-Wing.  In his emergency grievance Mathews also states that other inmates are bruised and beaten up and says someone needs to "get up here before we are killed." He says he is not going through the normal procedure because the Officer in charge told him they would beat him again if he told anyone. DEFENDANT  SHOCKLEY, inmate grievance administrator, responded on the grievance that: **"This grievance is not accepted as a grievance of emergency nature."** This grievance is attached hereto as Exhibit 1. No investigation was done with regard to this grievance until after VALDES' death.

30.     Between July 8 and July 15, 1999, VALDES made attempts to contact members of the media to advise them of the inmates' plight at the hands of the correctional officers. In so doing, VALDES went to the law library to retrieve the names and contact information of members of the

media. Unknown prison officials found out about VALDES' efforts to contact the media and made this known to the correctional officers on X-wing.

31.    On July 16, 1999, VALDES began making verbal complaints about the sadistic treatment of inmates in X-wing at FSP. He made these complaints to LUCAS and GRIFFIS.

32.    GRIFFIS and LUCAS, in an attempt to intimidate VALDES into silence in order to cover up the abusive treatment they and other correctional officers were inflicting on X-wing inmates, entered VALDES prison cell and physically attacked him causing VALDES great and serious injury.

33. Defendant THORNTON made threats to cause physical harm to VALDES.

34.    No correctional officer filed a use of force report, which is required when a correctional officer uses force to control an inmate. Rather, LUCAS filed a false disciplinary report against VALDES stating that VALDES threatened him.

35.    The next day, July 17, 1999, Lucas returned to VALDES' cell, to once again confront and threaten VALDES, VALDES did nothing in response to LUCAS' aggressive demeanor, which only sparked LUCAS' aggression further. LUCAS told VALDES "I have something for you." Then LUCAS left VALDES' cell area.

36.    Shortly thereafter, LUCAS again falsely reported to THORNTON that VALDES had threatened to kill him.

37.    About thirty minutes later, LUCAS returned along with THORNTON, BROWN AND LEWIS. VALDES seeing THORNTON called to him, as if trying to tell him what happened. Instead of giving VALDES a chance to speak, THORNTON'S response was to immediately subject

8

VALDES to an extraordinary amount of mace. THORNTON did not follow Department of Corrections procedure with regard to the dispensing of this gas on inmate VALDES.

38. STANFORD and BECK were present at the time and place VALDES was gassed on July 17, 1999, had the opportunity and means to intercede to prevent injury to VALDES, but failed to do so.

39. After inmate VALDES was repeatedly gassed, an extraction team consisting of BROWN, SAULS, GRIFFIS, LEWIS, HANSON and THORNTON entered VALDES' cell and struck VALDES as many as 20-30 times with their boots and with their hands, causing great and serious bodily injury. During the entire time of this activity, VALDES did not resist.

39A.   HANSON entered the cell first, with an electronic shield, and attempted to use it on VALDES, accidentally using it on a fellow correctional officer. The shield was taken away from him and used on VALDES. The shield was intentionally used to shock VALDES' head despite procedural rules prohibiting such use.

39B.   VALDES was not offering any resistance to correctional officers and did not have any weapons.

39C.   Nevertheless, HANSON stood on VALDES' ankles, to hold VALDES in place as the other correctional officers who were a part of the cell extraction were kicking and punching him. THORNTON waited immediately outside the cell watching.

39D.   HANSON also kicked Valdes on the buttocks, and stated that he did so out of frustration.

9

39E.    None of the extraction team correctional officers took any action to stop the others from assaulting VALDES.

39F.    HANSON left the cell in the middle of the beating, saying nothing to the other officers and failing to stop the beating from continuing.

39G.    After going to get paper towels to clean his eyes and blow his nose, due to the overwhelming odor of gas, HANSON came back to VALDES' cell and the beating was continuing. HANSON observed BROWN and others kicking VALDES as hard as possible and saying to VALDES, "who you gonna kill now mother fu—ker". At this time, HANSON noticed that VALDES was not moving.

39H.    HANSON then left the cell again to obtain a leg and arm restraint for VALDES. When he returned, the beating was continuing and BROWN was kicking Valdes near the face. There was no resistance or movement from VALDES. The other members of the extraction team either watched or continued to participate in hitting or kicking VALDES.

39I.    VALDES was then removed from the cell by the extraction team, including HANSON. VALDES was placed on a cart for transfer to medical because GRIFFIS said "he was not going to carry the piece of sh—t." VALDES was then taken to medical wearing only a pair of boxer shorts.

40.    VALDES was taken to the prison medical facility in dire need of immediate medical care to serious, potentially life-threatening injuries, but was not provided medical care. Instead the medical staff, including Nurse BURGER, in a further attempt to cover up this and other beatings on

X-wing, falsely reported that VALDES suffered minimal injuries including a cut lip, skin discoloration on one side, abdomen and shoulder and had no swelling.

40A.    HANSON was present at medical with other correctional officers while McEACHERN, BURGER, and RASH performed an examination. At no time, did any of the correctional officers present express to the medical personnel the extent of the beatings suffered by VALDES at the hands of the extraction team, including themselves.

40B.    HANSON then accompanied VALDES, with other correctional officers, back to X-Wing. None of the correctional officers took any affirmative steps to prevent further assault upon VALDES. Once VALES was placed back in a cell, it was clear to the correctional officers than VALDES was seriously injured and not moving. From the time of the cell extraction, through the medical examination, and the return to a cell, VALDES did not move unassisted. It was clear to the correctional officers and medical staff that VALDES was unable to walk on his own.

40C.    None of the correctional officers reported the activities of the other officers to any of their superiors.

41.    Later that afternoon, Defendants LUCAS, LEWIS, BROWN, THORNTON, SAULS, BECK AND GRIFFIS again entered VALDES' cell and beat him again striking VALDES as many as 20 and 30 times causing great and serious bodily injury, ultimately causing VALDES' death.

42.    THORNTON AND A.D. THORNTON, who were the senior officers present, took no action to stop their subordinates from punching and kicking VALDES, despite the opportunity and means to do so.

43. LUCAS, LEWIS, BROWN, THORNTON, SAULS, BECK AND GRIFFIS then

engaged in a concerted plan to cover up VADLES' death by:

      a.    packing up VALDES' cell and telling inmates they were putting VALDES on special management in a strip cell.

      b.    meeting among themselves to confer about a story that would explain VALDES' death.

      c.    arranging for the blood soaked floors of VALDES' cell and the adjacent hallway areas containing VALDES' blood to be cleaned with an antiseptic solution, thereby destroying evidence of what they had done.

      d.    making verbal and written false reports about VALDES causing his own death by throwing himself off his own bunk.

      e.    closing all the outer cell doors of the other inmates cells on X-wing in an effort to prevent any other inmate form observing their actions.

      f.    writing Disciplinary Reports charging VALDES with assault with a deadly weapon and possession of a weapon The Florida Department of Corrections never processed these disciplinary charges and no weapon was found or recovered.

43A.    Later, HANSON, who had gone off-duty and left the prison premises, learned that Valdes had died and he returned to the prison for debriefing.

43B.    HANSON and the other correctional officers who were part of the cell extraction of VALDES, falsified their incident and use of force reports. They got together to obtain and review VALDES' medical reports to determine the bruises caused during the initial beating on July 17, 1999, so that they could match up their stories. HANSON admitted that various of the Defendant

correctional officers told him specifically what to put in his statement and that he and the others clearly knew that his and their statements were false.

43C.    Defendants participated in a cover up of the actual events involving the beating of VALDES.

44.    MCEACHERN, BURGER and RASH were all licensed medical professionals who knew about the serious medical condition of VALDES during the two days of beatings herein described, had a duty to report the incident to superiors and to provide medical treatment to VALDES, but were intentionally and callously indifferent to VALDES' medical needs. Their collective failure to act as described herein contributed to VALDES' death.

45.    MARY HUDNALL, the health services administrator at FSP, was called and informed of VALDES' condition but failed to instruct any of the medical personnel to provide medical attention to VALDES and failed to take any immediate action to intercede, despite the opportunity and means to do so, to help VALDES.

46.    In a further attempt to cover up the facts concerning VALDES' death, CROSBY, A.D. THORNTON and MOORE permitted inmate witnesses to be exposed to violence, threats and coercion by corrections officers knowing fully that the potential for such activity was great.  As a result, inmate witnesses were physically beaten, threatened and coerced not to tell investigators the truth about what they had heard and seen in connection with the death of VALDES.

47.    There are numerous other incidents of sadistic violent behavior by corrections officers at FSP too great to list in this action.

48.    All of these acts, over the course of months and years, were known or should have

13

been known to CROSBY, A.D.THORNTON, WHITE, GEIBEIG, and SHOCKLEY.

49.     By failing to take action to prevent the sadistic behavior alleged herein upon notice of the existence of such activities by corrections officers who are sworn to uphold the law, CROSBY, A.D.THORNTON, WHITE, GEIBEIG and SHOCKLEY created a tacit rule or accepted practice that such activity is acceptable conduct by officers at FSP.

50.     By failing to investigate the numerous complaints by inmates conveyed by their grievances, CROSBY, A.D. THORNTON, WHITE, GEIBEIG, and SHOCKLEY created an environment in which corrections officers believed they could get away with unconstitutional acts upon inmates without repercussion or consequence.

51.     Despite all of the foregoing knowledge of inmate abuse at the hands of corrections officers, CROSBY ceased videotaping cell extractions, one of the only safeguards against these abuses, from close management areas, the areas where the aforementioned abuses were most likely to occur.  This action sent a message to the corrections officers who were violating inmates' constitutional rights that FSP administrators and supervisors were going to look the other way and permit the abuses to continue or resume.  Wardens at other prisons routinely videotape cell extractions.

52.     As set forth herein, corrections officers routinely conspired to inflict injury and sadistic punishment upon inmates without any justification of use of force.

53.     As set forth herein, corrections officers routinely conspired to cover up after inflicting injury and sadistic punishment upon inmates without any justification of use of force.

54.     As set forth herein, corrections officers routinely conspired to threaten and intimidate

14

inmates in an effort to secure their silence after inflicting injury and sadistic punishment upon inmates without any justification of use of force.

55.   The force used by LUCAS, LEWIS, BROWN, THORNTON, SAULS, BECK, HANSON, AND GRIFFIS was intentionally and sadistically used to inflict pain and injury and not for any lawful purpose.

56.   At no time did VALDES engage in any actions that would justify the use of any force, let alone the force described above.

57.   LUCAS, LEWIS, BROWN, THORNTON, SAULS, BECK, HANSON AND GRIFFIS jointly, and with full knowledge of the unconstitutional nature of their action, agreed to and did use excessive and unjustified force on VALDES.

58.   All of the other defendants named in this action permitted and expressly or tacitly approved of the acts of LUCAS, LEWIS, BROWN, THORNTON, SAULS, BECK, HANSON AND GRIFFIS, by their action or inaction.

59.   Because of their joint participation, each defendant named herein is jointly and severally liable to VALDES.

## COUNT I (CIVIL RIGHTS VIOLATION)

**AGAINST JAMES V. CROSBY JR., A.D. THORNTON, TIM GIEBEIG, RONNIE WHITE, CHARLES SHOCKLEY, TIMOTHY A. THORNTON, JASON PATRICK GRIFFIS, DEWEY BECK, CHARLES BROWN, ROBERT SAULS, MONTREZ LUCAS, ANDREW LEWIS, DONALD STANFORD, RAYMOND HANSON**

60.   Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-59, inclusive, as if fully herein.

61.   Defendants operated to violate VALDES' right not to be subjected to cruel or unusual

15

punishment as secured to decedent under the Eighth Amendment to the Constitution of the United States of America. These violations were of a type and character as to which any reasonable person would be aware.

62.     Defendants further operated to violate decedent's civil rights as protected by The Civil Rights Act, 42 U.S.C. §1983.

63.     Defendants, CROSBY, A.D. THORNTON, GIEBEIG, WHITE AND SHOCKLEY, have practiced a policy of violating individual civil rights in violation of The Civil Rights Act, 42 U.S.C. §1983.

64.     Specifically, with regard to the preceding paragraph, there has been a track record over the last 5 years in which inmates in custody of these defendants have been denied medical treatment of forced to endure cruel and unusual punishment at the hands of employees under these defendants control and supervision.

65.     As part FSP's policies and procedures THORNTON, GRIFFIS, BECK, BROWN, SAULS, LUCAS, LEWIS, HANSON, and STANFORD were trained to carry out their duties in conjunction with the foregoing course of conduct either explicitly or implicitly.

66.     Several of the corrections officers in the preceding paragraph were either previously suspended or were on disciplinary probation for similar acts of violence against inmates similar to that complained of in this action. Notwithstanding the foregoing, CROSBY, A.D. THORNTON. GIEBEIG, WHITE AND SHOCKLEY promoted these officers and/or permitted these defendants to be placed in positions of authority and responsibility for which they were clearly unsuited.

67.     As a direct and proximate result of the unlawful conduct of the defendants, as

16

aforesaid, decedent was deprived of his civil rights and, ultimately, of his life.

68.     The aforesaid acts of defendants were performed knowingly, intentionally, and maliciously, and/or were performed in a reckless manner with callous indifference to the health, safety and civil rights of the decedent, by reason of which Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendants JAMES V. CROSBY JR., TIM GIEBEIG, A.D. THORNTON, RONNIE WHITE, CHARLES SHOCKLEY, TIMOTHY A. THORNTON, JASON PATRICK GRIFFIS, DEWEY BECK, CHARLES BROWN, ROBERT SAULS, MONTREZ LUCAS, ANDREW LEWIS, DONALD STANFORD, and RAYMOND HANSON for compensatory and punitive damages, costs, reasonable attorneys fees pursuant to 42 U.S.C. § 1988 and any other relief which the Court determines is appropriate.

## COUNT II (CIVIL RIGHTS VIOLATION)
### AGAINST JIMMIE BURGER, DENISE MCEACHERN, ROBIN RASH, and MARY HUDNALL

69.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-59, inclusive, as if fully set forth herein.

70.     Defendants BURGER, MCEACHERN, RASH and HUDNALL, operated to violate VALDES' right not to be subjected to cruel or unusual punishment as secured to decedent under the Eighth Amendment to the Constitution of the United States of America.  These violations were of a type and character as to which any reasonable person would be aware.

71.     These Defendants further operated to violate decedent's civil rights as protected by The Civil Rights Act, 42 U.S.C. §1983.

17

72.     As a direct and proximate result of the unlawful conduct of the defendants, as aforesaid, VALDES was deprived of his civil rights and, ultimately, of his life.

73.     The aforesaid acts of the defendants were performed knowingly, intentionally, and maliciously, and/or were performed in a reckless manner with callous indifference to the health, safety and civil rights of VALDES, by reason of which Plaintiff is entitled to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against BURGER, MCEACHERN, RASH, AND HUDNALL for compensatory and punitive damages, costs and reasonable attorneys fees pursuant to 42 U.S.C. §1988 and any other relief which the Court determines is appropriate.

## COUNT III (WRONGFUL DEATH)
## [ALL DEFENDANTS]

74.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-59, inclusive, as if fully set forth herein.

75.     This is an action pursuant to Fla. Stat. §768.20 brought by Plaintiff as the duly appointed, qualified and acting personal representatives of the Estate of JOY FRANCIS "FRANK" VALDES.

76.     The potential beneficiaries of the recovery in this action and the relationship of each to the decedent are:

Mario Valdes – Father

77.     Based upon the facts incorporated by reference herein, all of the Defendants were negligent in their care and custody of VALDES.

78.     Plaintiff further alleges that based upon the facts incorporated by reference herein,

18

that all Defendants sued in their individual capacities acted in bad faith an/or with a willful disregard of duty.

79.     As a result, VALDES suffered bodily injury and resulting pain and suffering that caused his death.

80.     The surviving natural parent of VALDES sustained mental pain and anguish due to the untimely, violent death of VALDES and the specific manner upon which pain and sadistic cruelty was inflicted upon his son. A parent of an adult child may seek recovery for mental pain and suffering in accordance with F.S. § 768.21(4).

81.     All conditions precedent have been satisfied or they have otherwise been waived.  All statutory notices have been given in a timely manner.

WHEREFORE, Plaintiff and the survivors demand judgment against all Defendants for compensatory and punitive damages, costs, and any other relief which the Court determines is appropriate.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Dated this _27th_ day of May 2003.

Respectfully Submitted:

By: _____
Guy Bennett Rubin, Esq.
Florida Bar No. 691305
Ellis Rubin, Esq.
Florida Bar No. 069289
Stuart M. Address, Esq.
Florida Bar No. 989606
Rubin and Rubin
P.O. Box 395
Stuart, Florida 34995
(772) 283-2004
(772) 283-2009 facsimile

Attorneys for Plaintiff

Of Counsel:    Stuart Edward Goldenberg
               Florida Bar No. 281344
               Lichtblau and Goldenberg
               631 US Highway One
               Suite 306
               North Palm Beach, Florida 33408

20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by US regular Mail to: **Laureen Galeoto**, Esq., Broad & Cassel, 215 South Monroe Street, Suite 400, Tallahassee, Florida 32301, **Robert Ellis**, Esq., Gobelman, Love, Gavin et als., 815 South Main Street, Suite 300, Jacksonville, Florida 32207, **Lesli G. Street,** Pennington, Moore, Wilkinson, Bell & Dunbar, P.A., 215 South Monroe Street, Tallahassee, Florida 32301, **John F. Dickinson**, Esq., Constagny, Brooks & Smith, P.O. Box 41099, Jacksonville, Florida 32203-1099, and **Andrew Vloedman, Esq.**, NW 43rd Street, Ste 200, Gainesville, FL  32606 on this $27th$ day of May 2003.

_____
Guy Bennett Rubin, Esq. (FBN 691305)
Stuart M. Address, Esq. (FBN 989606)
Attorneys for Plaintiffs
**RUBIN & RUBIN**
P.O. Box 395
Stuart, Florida  34995
Telephone:      (772) 283-2004
Facsimile:      (772) 283-2009

21

MAILED ON FILED
WITH AGENCY CLERK

JUL 23 1999

Department of Corrections
Office of the General Counsel

# STATE OF FLORIDA
## DEPARTMENT OF CORRECTIONS
### REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL

**RECEIVED**

JUL 2 0 1999

Department of Corrections
Inmate Grievance Appeals

TO: ☐ Superintendent  ☐ Assistant Superintendent  ☑ Secretary, Florida Department of Corrections

From: _MATHEWS WILLIS_         798495      F.S.P
      Last Name, First, Middle Initial      Number      Institution

99 - 618541

EMERGENCY GRIEVANCE

---

### PART A – INMATE GRIEVANCE

I'm writing this grievance out of constant harrasment and fear of my life and with the possibility of brutal harm in retaliation for writing this. I was sent here on 7-4-99 with three others and every since I've been brutalized and assaulted repeatedly. My jaw is now broke my face bruised up, my back hurt. I've been refused shower, property and threatened to be killed if I say anything by officers and captins. The other guys are bruised and swollen also. And someone needs to be sent in here to get us before we are killed. I'm not going through the normal procedure. Because the OIC told me he'd kill me, after they had beat if they find out I told.

_7-15-99_                    _Nathan Willis  798495_
Date                         Signature of Grievant and D.C.#

*BY SIGNATURE, INMATE AGREES TO THE FOLLOWING # OF 30-DAY EXTENSIONS: _0_  _I will_
                                                                      #        Signature

---

### PART B – RESPONSE

**NOTE: The grievance is not accepted as a grievance of an emergency nature.**

Your appeal has been reviewed and evaluated. The issue of your complaint has been referred to the investigative section of the Office of the Inspector General for appropriate action. Upon completion of necessary action, information will be provided to appropriate administrators for final determination and handling. As action has been initiated, you may consider your appeal approved from that standpoint.

Ronnie White                    _Charles W. Shockley_          7/22/99
Signature and Typed or          Signature of Superintendent,    Date
Printed Name                    Assistant Superintendent, or
Employee Responding             Secretary's Representative      CHARLES W. SHOCKLEY
                                                                INMATE GRIEVANCE ADMINISTRATOR

ORIGINAL: TO BE RETURNED TO GRIEVANT AFTER COMPLETION OF ACTION.

- - - - - - - - - - - - - - - - - - - - - - TEAR ON PERFORATION - - - - - - - - - - - - - - - - - - - - -

**EXHIBIT 1**