FILED
2004 JUN 25 P 2:47

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARIO VALDES, INDIVIDUALLY, AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JOY FRANCIS "FRANK" VALDES,

Plaintiff,

vs.

CASE NO.: 3:01-CV-799-J-32HTS

JAMES V. CROSBY, JR. et. al,

Defendants.

_______________________________________/

**DEFENDANT CROSBY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Comes now, Defendant, JAMES V. CROSBY, JR.. ("Crosby") by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 3.01(a), and hereby files this Memorandum of Law in Support of Crosby's Motion for Summary Judgment filed on June 25, 2004 and states as follows:

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence before the court demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). With respect to the standard for summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celetex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

281

Gray v. Manklow (In re Optical Techs., Inc.), 246 F. 3d 1332, 1334 (11th Cir. 2001).

The Court must "resolve all reasonable doubts in favor of the non-moving party," but it is not required " to resolve all doubts in such a manner." Earley v. Champion Int'l Corp., 907 F. 2d 1077, 1080 (11th Cir. 1990); Mathews v. Crosby, Order on Defendant's Crosby's and Giebeig's Motions for Summary Judgment, Case No. 3:99-CV-1117-J-32MMH (M.D. Fla. 2004).[1] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for plaintiff." Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)). "'If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'" Id. (quoting Anderson, 477 U.S. 249-50). "To the extent that affidavits submitted in opposition to summary judgment merely reiterate allegations made in the complaint, without providing specific factual information made on the basis of personal knowledge, they are insufficient." Santiago-Ramos v. Centennial P.R. Wireless Corp., 277 F. 3d 46, 53 (1st Cir. 2000).

## II. STATEMENT OF FACTS

A brief statement of the facts applicable to Crosby are contained in Crosby's Motion for Summary Judgment.

---

[1] Defendant Crosby acknowledges this Court's prior ruling in the Mathews case that the decision to grant Crosby summary judgment in Mathews should not be viewed nor used as precedent in this action; however, the decisions cited in this Court's Order of January 20, 2004 granting summary judgment in the Mathews case are based on identical legal principles and analysis and are therefore appropriate for reference in this case. Accordingly, where Crosby relies upon portions of decisions previously cited by this Court's Order in Mathews, the Order is cited.

## III. LIABILITY OF SUPERVISORY OFFICIALS UNDER § 1983.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F. 3d 1352, 1360 (11th Cir. 1999); Mathews v. Crosby, supra.(citations omitted).

Plaintiff's claims against Crosby are essentially based upon Crosby's alleged failure, as the Warden of FSP, to protect Frank Valdes from the Defendant correctional officers, his alleged failure to properly supervise Defendant correctional officers, his alleged failure to adequately investigate claims of alleged abuse on inmates, and his alleged decision to cease videotaping cell extractions of inmates, one of the only safeguards against abuse. (See Second Amended Complaint at ¶¶ 28, 46-51.)

In order to establish a cause of action against Crosby, Plaintiff must establish supervisory liability. "Supervisory liability occurs when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F. 2d 667, 671 (11th Cir. 1990)(citing Lewis v. Smith, 855 F. 2d 736, 738 (11th Cir. 1998)(per curiam); H.C. by Hewett v. Jarrard, 786 F. 2d 1080, 1086-87 (11th Cir. 1986); Fundiller v. City of Cooper City, 777 F. 2d 1436, 1443 (11th Cir. 1985); Wilson v. Attaway, 757 F. 2d 1227, 1241 (11th Cir. 1985).

The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do

so." Gonzalez v. Reno, 325 F. 3d 1228, 1234 (11th Cir. 2003). "Alternatively, the causal connection may be established when a supervisor's 'custom or policy . . . result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" Cottone, 326 F. 3d at 1360. **"The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous."** Id. (Emphasis added).

Plaintiff must also prove a causal connection between the alleged risk of abuse and the alleged abuse that is the subject of the constitutional deprivation. See Brown v. Crawford, 906 F. 2d 671. "The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation and he fails to do so." Id. "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Id. The risk must be an objectively substantial risk of serious harm to prisoners, and the prison official must respond to that risk in an objectively unreasonable manner. Id. (citing Farmer v. Brennan, 511 U.S. 825, 834, 844-845 (1994)).

The record in the instant case demonstrates Crosby was not present at FSP at the time of the events alleged in the Second Amended Complaint. Crosby testified at his deposition that he was scheduled to begin his vacation "either the 16th or 17th . . . ." (See Dep. Tr. James V. Crosby p. 52 l. 12.) Crosby did not arrive at FSP on July 17, 1999 until after being called about the incident that is the subject of this action. (Id. at p. 78 l. 4-12.) Accordingly, his alleged

violations of the Eighth Amendment must be viewed from the perspective of a supervisory official.

## III. CROSBY IS ENTITLED TO QUALIFIED IMMUNITY

"The defense of qualified immunity completely protects government officials performing discretionary functions from suit in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Cottone, 326 F. 3d at 1357 (citing Gonzalez v. Reno, 325 F. 3d at 1233) (quoting Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002); Vinyard v. Wilson, 311 F. 3d 1340, 1346 (11th Cir. 2002). The defense is called qualified immunity because the official is immune from a damage lawsuit, qualified upon his ability to show he did not knowingly violate the plaintiff's clearly established constitutional right. Ray v. Foltz, 17 Fla. L. Wkly. Fed. C 569; WL 1144698 * 2 (D.C. Docket No. 03-00086-CV-J-20-HTS 2004)(11th Cir. 2004)(citing Harlow v. Fitzgerald, 457 U.S. 800 (1982). When a government official makes a decision that does not knowingly violate clearly established statutory or constitutional rights, "they are not required to defend themselves in a lawsuit seeking damages." Id. They are immune from a damages suit when the defense of qualified immunity is applicable. Id.

The defense is qualified upon Crosby's duty to show he did not knowingly violate the plaintiff's clearly established constitutional right. Id. "[A]ll but the incompetent and those who knowingly violate the law are shielded from lawsuits." Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). The Eleventh Circuit has followed this instruction but noted that "courts should think long and hard before stripping defendants of immunity." Lassiter v. Alabama A&M

Univ., 28 F. 3d 1146, 1149 (11th Cir. 1994). "The United States Supreme Court has said that this defense serves important public policies." Foltz at *2 (citing Richardson v. McKnight, 521 U.S. 399, 408-11 (1997).

In Foltz, the Eleventh Circuit recently relied upon precedent established by the Supreme Court for the liability of government officials as follows:

> The Court noted that the threat of being sued would 'dampen the ardor of all but the most resolute, or the most irresponsible public officials. (citing Richardson, at 408). The grant of such a defense, according to the Court, is to encourage competent and responsible people to enter government service. Id. It is precisely these people, not the irresponsible and careless, who would be deterred from government service by the fear of being sued. It is for this reason that the doctrine provides immunity from suit, not just a defense that may be raised at trial. (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)

Id.

"A plaintiff must establish more than broad legal truisms; he or she must demonstrate that the law fixed the contours of the right so clearly that a reasonable official would have understood his acts were unlawful." Dolhite v. Maughon, 74 F. 3d 1027, 1040-41 (11th Cir. 1996)(citing Anderson v. Creighton, 483 U.S. 635, 645, 107 S. Ct. 3034, 3039 (1987)). "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority." Cottone, 326 F. 3d at 1357 (citing Gonzalez, supra at 1234.)

In this case, it is undisputed Crosby was acting within his discretionary authority as warden of Florida State Prison ("FSP").

Once a defendant establishes he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the government official is not entitled to qualified immunity. Id. at 1358 (citing Vinyard 311 F. 3d at 1346). There is a two part-test to determine the applicability of qualified immunity. Id. "The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation." Id. If, under the plaintiff's allegations, the defendant's actions would have violated a constitutional right, "the next, sequential step to ask is whether the right was clearly established." Id.

A. Crosby did not violate Plaintiff's Eighth Amendment rights.

A violation of the Eighth Amendment requires a prison official to act with deliberate indifference to a known, substantial risk of serious harm to an inmate. Carter v. Galloway, 352 F. 3d 1346, 1349 (11th Cir. 2003). "An Eighth Amendment violation will occur when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." Id. (quoting Marsh v. Butler County, Ala., 268 F. 3d 1014, 1028 (11th Cir. 2001)). "Furthermore, such risk must be an objectively substantial risk of serious harm to prisoners, and the prison official must respond to this risk in an objectively unreasonable manner." Cottone, 326 F. 3d at 1358.

"To survive summary judgment on [a] section 1983 Eighth Amendment claim, [Plaintiff][must] produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Carter, 352 F. 3d at 1349 (quoting Hale v. Tallapoosa County, 50 F. 3d 1579, 1582 (11th Cir. 1995)).

Also, in order to satisfy a claim under the Eighth Amendment a two prong test must be met: "First, there must be, objectively speaking, conduct by public officials 'sufficiently serious' to constitute a cruel or unusual deprivation - - one 'denying the minimal civilized measures of life's necessities.'" Taylor v. Adams, 221 F. 3d 1254, 1257 (11th Cir. 2000). "Second there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish. Id.

For the reasons referenced in the following paragraphs there is insufficient record evidence to establish Crosby violated Plaintiff's rights under the Eighth Amendment.

B. Crosby did not act with deliberate indifference.

**"Deliberate indifference is not the same thing as negligence or carelessness."** Foltz, supra at *4 (citing Estelle v. Gamble, 429 U.S. 97 (1976)) (emphasis added). "On the contrary the Supreme Court has made clear that a state official acts with deliberate indifference only when he disregards a risk of harm of which he is *actually aware.*" Id. (citing Farmer v. Brennan, 511 U.S. 825, 836 (1994)). The Eleventh Circuit has held, "in order to establish deliberate indifference, plaintiffs must be able to allege (and prove at trial) that the defendant (1) was objectively aware of a risk of serious harm; (2) recklessly disregarded the risk of harm; and (3) this conduct was more than merely negligent. Id. (citing McElligott v. Foley, 182 F. 3d 1248, 1255 (11th Cir. 1999).

(1) There is insufficient record evidence to prove that Crosby was objectively aware of a substantial risk that Valdes could be the subject of abuse.

Plaintiff's Second Amended Complaint does not specifically allege that Defendant Crosby was aware of a substantial risk that Valdes could be the subject of abuse. Plaintiff's interrogatory answers regarding Crosby's alleged knowledge of a substantial risk of abuse state that Crosby was aware the FSP officers had a propensity for violence due to numerous complaints and grievances filed by inmates. (See Plaintiff's Supplemental Answers to First Interrogatories By Defendants Crosby, Giebeig and A.D. Thornton at answer 17(a).) Plaintiff refers to information gathered by former FSP Warden Ron McAndrew that was discussed with Defendant Crosby prior to Valdes' death. (Id.) These facts say nothing more than Crosby should be responsible for Plaintiff's alleged harm because he was the warden of FSP and because Ron McAndrew told Crosby that some officers were suspicious. Plaintiff does not state any facts which are sufficient to meet the rigorous burden for Crosby to become liable for the actions of his subordinates. See Cottone, supra.

Plaintiff's Supplemental Answers to First Interrogatories also refer to a statement attributed to Defendant Crosby that "some officers' names are constantly coming up when there are allegations of abuse against inmates and that they should be moved off of the high profile wings where they would be less likely to be involved." (See Plaintiff's Supplemental Answers to First Interrogatories By Defendants Crosby, Giebeig and A.D. Thornton at 17(a).) This general reference to an alleged statement, without more, does not establish objective evidence that Defendant Crosby was aware of a substantial risk of harm to Valdes. Moreover, there is no record evidence to establish because "names were coming up", Crosby was aware of obvious, flagrant, rampant abuse of continued duration, rather than isolated occurrences. There is no

evidence that prior alleged abuse involved Frank Valdes nor is there evidence that Crosby ignored a substantial risk of harm to Frank Valdes.

FSP is Florida's institution for handling the most difficult of inmates; the worst of the worst. It is routine for inmates at FSP to file complaints alleging abuse. Plaintiff's interrogatory answers refer to inmate complaints "too numerous to list". (See Plaintiff's Supplemental Answers to First Interrogatories by Defendant's Crosby, Giebeig, and A.D. Thornton at 18(a).) However, there is no record evidence to suggest there are facts relating to any of these inmate complaints which made Crosby aware of a substantial risk of harm to Frank Valdes. It is not uncommon for inmates to file allegations of abuse for secondary gain. (See May 25, 2004 Dep. Tr. of Chase Riveland p. 133 l. 18-p. 134. l. 3.) Specifically, inmates may collaborate and file numerous allegations of abuse against a correctional officer when they want to have the officer moved from the area where they are confined. (Id.)

The existence of other allegations of abuse does not suggest Crosby should have been aware of a substantial risk to Frank Valdes. Mere allegations from inmates who routinely file baseless allegations of abuse without substantiated facts fall far short of the obvious, flagrant, rampant and continued abuse that is required to put Crosby on notice of the alleged risk of harm to Frank Valdes in order to establish deliberate indifference. See Brown v. Crawford, 906 F. 2d at 671.

Plaintiff further alleges Crosby promoted correctional officers who had been either previously suspended or on disciplinary probation. (See Second Amended Complaint at ¶ 66.) Plaintiff does not provide a factual basis to support these allegations. Patricia McCusker testified

during her deposition that the warden does not always yield the hiring and promotion power over his or her institution. (See Dep. Tr. of Patricia McCusker, p. 21 . 6.) With regard to promotions of sergeants on up, Mrs. McCusker testified officers are interviewed if they are qualified to be invited to interview. (Id. at p. 21, l. 23.) The officer then answers five questions and his or her answers are scored. (Id. at p. 22, l. 3 ) Those scores are added to previous scores. (Id.) The final promotion decision is based on the highest score. (Id.) The warden does not make the final decision because it would be a violation of the Police Benevolent Association (PBA) contract. (Id. at p. 22, l. 18)

The testimony of Patricia McCusker demonstrates that Crosby, as warden, was not responsible for making the decisions as to which officers were promoted. There is no record evidence to suggest Crosby promoted officers with knowledge that the promotions would lead to any potential abuse that could bring about the death of Frank Valdes. Plaintiff relies upon conclusory statements that do not establish a causal connection between the alleged risk and the alleged abuse, as required by applicable law.

(2) There is no record evidence to establish that Crosby was deliberately indifferent to the risk of abuse upon inmates.

Plaintiff's interrogatory answers state that Crosby failed to take any steps to stop the abuse from continuing. Plaintiff states the failure to stop the abuse provided officers with "tacit" approval to continue abusing inmates. (See Plaintiff's Supplemental Answers to First Interrogatories By Defendants Crosby, Giebeig and A.D. Thornton at answer 17(a).) However, Plaintiff does not reference any specific facts or circumstances to support this statement.

Plaintiff's statements are conclusory and do not establish a causal connection between the alleged risk and the alleged abuse as required by applicable law.

To the contrary, the deposition testimony of Patricia McCusker, former assistant warden at FSP under Defendant Crosby, demonstrates Crosby aggressively reacted to allegations of abuse. Mrs. McCusker testified that Crosby was "very proactive". (See Dep. Tr. of Patricia McCusker p. 24 l. 24.) He had a list of all the officers who had used force and he kept track of them. (Id.) "He espoused at every staff meeting about excessive use of force that he would not tolerate it." Id.

The deposition testimony of Patricia McCusker establishes Crosby actively pursued allegations of inmate abuse and addressed the issue often. Ms. McCusker's testimony demonstrates that Crosby was aware of allegations of abuse and he took affirmative actions to address the allegations. There is no evidence in the record to establish Crosby failed to take the necessary steps to stop abuse from continuing or that Crosby was deliberately indifferent to the needs of inmates.

(3) There is no record evidence to establish that Crosby engaged in inadequate investigations of inmate grievances.

Plaintiff contends that Crosby engaged in inadequate investigations of inmate grievances. (See Second Amended Complaint at ¶50.)[2] Plaintiff's interrogatory answers state that "the

---

[2] Defendant Crosby notes that the Second Amended Complaint specifically alleges in paragraph 50 that Crosby failed to investigate the numerous complaints by inmates conveyed by their grievances. However, in Plaintiff's Supplemental Responses to First Interrogatories, Plaintiff states that "Plaintiff is not alleging that the grievances were not investigated. Plaintiff is alleging that the investigations were cursory and investigators and supervisors have chosen to

names of inmates who filed grievances are too numerous to list." (See Plaintiff's Supplemental Answers to First Interrogatories By Defendants Crosby, Giebeig and A.D. Thornton at 18(a)). Plaintiff's Second Supplemental Responses to Defendant's First Interrogatories, however, refer to a chart labeled "Mathews-Inmate Grievances at FSP re: Abuse/Assault." This chart references approximately 503 different grievances allegedly filed by inmates at Florida State Prison that were filed between January 23, 1995 and June 26, 2000. Plaintiff does not specify which of the grievances listed in the chart were insufficiently investigated. Moreover, Plaintiff does not identify who the officers were that were involved in the events alleged in the grievances.

Additionally, a significant number of the grievances listed in the chart were filed after the incident involving Valdes' death. A large number of the grievances are actually listed as having occurred after July 17, 1999. Accordingly, those grievances filed after Valdes' death are irrelevant to whether Crosby failed to investigate the alleged abuse at FSP that resulted in a risk of harm to Frank Valdes. Moreover, approximately 140 of the alleged grievances listed are alleged to have occurred prior to 1998. These grievances would have been filed prior to when Crosby was warden of FSP.

Plaintiff also contends the testimony of and documents relating to Willie Mathews are relevant to this cause of action. (See Plaintiff's Supplemental Answers to First Interrogatories

---

look the other way with regard to inmate abuse thereby giving officers their tacit approval." See Plaintiff's Supplemental Responses to First Interrogatories at 18(c). Accordingly, Defendant Crosby responds to the allegation that the investigations were cursory rather than to an allegation that the grievances were not investigated. Such an allegation is a concession that, at the most, these Defendants engaged in negligence rather than conduct that demonstrated a deliberate indifference. Foltz, 2004 WL 1144698 at * 4.

By Defendant's Crosby, Giebeig and A.D. Thornton Answer 15(b).) In fact, many of the documents and witnesses that were identified in the Mathews action have been identified by Plaintiff in this action. As this Court is aware, a factual determination regarding Willie Mathews' allegations against Crosby has already been made. This Court already considered the testimony of Willie Mathews in reaching the decision to grant summary judgment in favor of Crosby and against Willie Mathews. Plaintiff's counsel's efforts to "boot strap" the evidence that was insufficient to survive summary judgment in Mathews is a telling sign which suggests Plaintiff has little more to offer in this action.

(4) There is no record evidence to show Crosby did not use hand held video cameras with knowledge that inmates would be more likely to be subjected to abuse nor does the lack of video surveillance establish deliberate indifference.

Plaintiff contends Crosby ceased video taping cell extractions at FSP despite his knowledge that doing so provided a safeguard against inmate abuse. (See Second Amended Complaint at ¶ 51.) This does not establish deliberate indifference as a matter of law. See Hopson v. Cheltenham Township, Civ. A. No. 90-0587 1990 WL 102883 * 7 (W.D. PA Jul 17, 1990)(holding defendant's failure to maintain, repair, or replace cell monitoring video cameras was not deliberate indifference and police department was under no constitutional duty to install video surveillance system); Williams v. City of Lancaster, Pa, 639 F. Supp 377, 384 (E.D. PA 1986)(holding although suicides were a persistent problem in the jail the police department was under no obligation to install a video surveillance system as the problem was not of defendants' making); Kocienski v. Bayonne, 757 F. Supp 457, 467, n. 13 (D. N.J. 1991)(holding plaintiff's reference to a handful of suicides which had taken place over the years and the failure of the jail

to follow state recommendations for the installation of video monitoring equipment were unpersuasive to establish deliberate indifference)(citing Williams, supra).

While these cases pertain to inmate suicides, they are applicable to the case at hand. In each of these cases inmates alleged that jail or prison supervisors were deliberately indifferent to their needs because the alleged constitutional deprivation could have been prevented if video cameras had been present as a safeguard. In this action, Plaintiff also alleges the use of video cameras was "one of the only safeguards" against abuse. (See Second Amended Complaint at ¶ 51.)

From a factual standpoint, there is no record evidence to establish Crosby acted with deliberate indifference in discontinuing the video taping of cell extractions or that Crosby was actually aware that video taping cell extractions could have prevented the death of Frank Valdes. Plaintiff's interrogatory answers state that all use of force incidents were videotaped during Ron McAndrew's tenure as warden of FSP. (See Plaintiff's Supplemental Responses to First Interrogatories at 19(a).) This general statement that a prior warden routinely videotaped cell extractions is insufficient to establish that Crosby's decisions regarding the use of hand held video cameras was either causally related to the alleged abuse of Plaintiff or that Crosby was deliberately indifferent to the needs of inmates as a result of his position regarding video cameras. Assuming arguendo that Crosby had adopted Ron McAndrew's policy to use hand held video cameras to record use of force incidents, there is absolutely nothing in the record to suggest that if such a policy were enforced by Crosby it would have prevented the alleged harm to Frank Valdes.

Moreover, in order to establish a cause of action against Crosby for failing to use video cameras to record use of force, Plaintiff must establish that Crosby's actions were in violation of clearly established law in order to overcome the defense of qualified immunity. See Cottone, 326 F. 3d at 1359. Plaintiff has failed to allege that Crosby violated any laws other than the 8th and 14th Amendments of the Constitution and 28 U.S.C. §§ 1331 and 1343(a)(3) and 42 U.S.C. §§ 1983 and 1988. Plaintiff must do more than this.

> In satisfying this burden, the plaintiff cannot point to sweeping propositions of law and simply posit that those propositions are applicable. Instead, the plaintiff must draw the court's attention toward a more particularized and fact-specific inquiry . . . show[ing] that there existed sufficient case law establishing the contours of his or her constitutional rights such that the unlawfulness of the defendant's conduct would have been apparent to a reasonable official in the same circumstances.... If no such case law exists, then the defendant is entitled to qualified immunity.

Belcher v. City of Foley, Ala., 30 F. 3d 1390, 1395 (11th Cir. 1994)(citing Nicholson v. Georgia Dept. of Human Resources, 918 F. 2d 145, 147 (11th Cir. 1990).

Plaintiff only has the opinion of Ron McAndrew to establish that the use of hand held video cameras should have been enforced by Crosby. This is hardly clearly established law.

(5) There is no record evidence to establish that Crosby was involved in the falsification of incident reports.

Plaintiff alleges that Defendants are responsible for talking amongst themselves to concoct a story that Frank Valdes was self-inflicting injuries, and meeting together before the filing of reports to ensure everyone was telling the same story. (See Plaintiff's Supplemental Answers to First Interrogatories By Defendants Crosby, Giebeig, and A.D. Thornton at 20.) These facts are irrelevant to the allegation that Crosby violated the Eighth Amendment rights of

Frank Valdes because Crosby is not alleged to have been involved in the events that led to the death. According to Plaintiff's allegations, any evidence that would suggest Crosby may have been involved in the investigation occurred after Frank Valdes was deceased.

Assuming arguendo that Crosby's alleged involvement is relevant, there is no record evidence to suggest Crosby was involved in the Defendant correctional officers' preparation of use of force reports subsequent to the death of Frank Valdes. To the contrary, the only record evidence shows Mr. Crosby did not review the incident reports. Crosby testified that he did not look at the use of force reports of the cell extraction that the officers filled out. (See Dep. Tr. of James Crosby p. 8 1 l. 11-15.)

Crosby testified that he wanted a time line of what happened that day so that he could tell his boss. (See Dep. Tr. of James Crosby p. 86, l. 17-21) He was not involved in the investigation because it was a homicide which was to be handled by the Inspector General's Office and the Florida Department of Law Enforcement by protocol. (Id. at p. 85 l. 8-20.) The only record evidence regarding Crosby's involvement shows Crosby arrived at FSP after the Florida Department of Law Enforcement and the Inspector General's Officer were already there. (Id. at p. 86 l. 20-21.) Other than collecting information to create a time line for his boss, Crosby directed the correctional officers whom he spoke with to provide their reports to the inspector. (Id. p. 87 l. 2-p. 88 l. 16; p. 94 l. 13-16.) Crosby was never with the officers when they prepared their reports. (Id. p. 95 l. 6-12.) The collection of evidence was the responsibility of the Inspector General's Office and the Florida Department of Law Enforcement. (Id. at p. 104 l. 9-11.)

Plaintiff has also raised issue concerning the presence of counsel at FSP, alleging counsel improperly assisted the Defendant correctional officers with the preparation of their incident reports. However, there is no record evidence to suggest that Crosby had any involvement in the presence of counsel. Crosby found out much later that an attorney was allowed where the officers were. (Id. at p. 105 l. 4-21.) Crosby has no personal knowledge regarding this issue. (Id. at p. 105 l. 4-p. 109 l. 21; p. 117 l. 21-24.) There is no evidence to the contrary.

To the extent Plaintiff alleges Crosby created an environment where there would have been prior incidents where abuse would have been condoned by the falsification of incident reports regarding abuse, there is no evidence to suggest this is the case. The only witness who provided any testimony regarding this issue was Defendant Raymond Hanson. Mr. Hanson testified as follows:

Q Was this the only time that you had written a use-of-force report where suggestions were made to put into your report.

A Yes, Sir.

(Dep. Tr. of Raymond Hanson at p. 81 l. 14-17.)

## IV THE DISTRICT COURT DOES NOT HAVE JURISDICTION TO HEAR PLAINTIFF'S ALLEGED CLAIM OF WRONGFUL DEATH AGAINST CROSBY

Plaintiff's claim for wrongful death against Crosby must fail because qualified immunity mandates dismissal of Plaintiff's federal claims. Federal questions carry jurisdiction over state law claims that arise out of a common nucleus of operative fact, such that the relationship between the federal claim and the state claim permits the conclusion that the entire

claim before the court compromises one constitutional case. City of Chicago v. Int'l Coll of Surgeons, 522 U.S. 156, 165-66 (1997). In this case, since Plaintiff's claim for wrongful death against Crosby clearly arises out of a common nucleus of operative fact with his federal claims, they must be dismissed. Moreover, there is no record evidence to suggest that Crosby had any direct involvement in the death of Valdes.

## V. CONCLUSION

In conclusion, the pleadings, depositions and answers to interrogatories show there is no genuine issue as to any material fact and Crosby is entitled to a judgment as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Respectfully submitted,

**GOBELMAN, LOVE, GAVIN, BLAZS & WASILENKO**

Kevin A. Blazs, Esquire
Florida Bar No: 0606383
Ronald S. Wasilenko, Esquire
Florida Bar No: 0137510
Robert H. Ellis, Esquire
Florida Bar No. 0152552
Michael D. Kendall, Esquire
Florida Bar No. 0379440
815 South Main Street, Suite 300
Jacksonville, FL 32207
(904) 393-9007

## CERTIFICATE OF SERVICE

I CERTIFY that a copy hereof has been furnished to **Guy Bennett Rubin, Esquire, Ellis S. Rubin, Esquire, and Stuart M. Address, Esquire, Rubin &** Rubin, , P.O. Box 395, Stuart, Florida 34995; Attorneys for **Plaintiff; D. Andrew Vloedman, Esquire,** 2790 N.W. 43rd Street, Suite 200, Gainesville, FL, 32606, Attorneys for Lewis; **John F. Dickinson, Esquire and J. Ray Poole, Esquire**, Constagny, Brooks & Smith, P.O. **Box** 41099, Jacksonville, FL 32203-1099, Attorneys for Defendants, Burger, McEachern and Hudnall and **Martin Fitzpatrick, Esquire,** P.O. Drawer 11300, Tallahassee, FL 32302, Attorneys for Sauls, Brown, Beck, Stanford, Timothy Thornton and Griffis by U.S. Mail, this 25TH day of June, 2004.

Robert H. Ellis

P:\client\3469\PLEADINGS\MOL for MSJ Crosby.wpd